NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0398n.06

No. 13-2257

**FILED**
*Jun 02, 2014*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NANCY GARDNER,                                      )
                                                   )
    Plaintiff-Appellant,                           )
                                                   )
v.                                                 )          ON APPEAL FROM THE
                                                   )          UNITED STATES DISTRICT
QUICKEN LOANS, INC., et al.,                       )          COURT FOR THE EASTERN
                                                   )          DISTRICT OF MICHIGAN
    Defendants-Appellees.                          )
                                                   )
                                                   )

BEFORE: GUY, GIBBONS, GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** In this mortgage foreclosure case, plaintiff-appellant Nancy Gardner appeals the district court's grant of the motion of the defendants-appellees, Quicken Loans, Inc., Flagstar Bank, FSB, and Potestivo and Associates, P.C., to dismiss for failure to state a claim upon which relief can be granted. We affirm.

I.

On May 18, 2007, Gardner executed a note in the amount of $215,200.00 to obtain a loan from Flagstar to purchase real property commonly known as 7221 State Road, Burtchville, Michigan 48059. As security for the loan, Gardner executed a mortgage on the property. On May 22, 2007, the mortgage was recorded with the St. Clair County Register of Deeds, in Liber 3723 Page 10. Both the note and mortgage were in favor of Flagstar, as lender, with Mortgage Electronic Registration Systems, Inc. (MERS) acting solely as the nominee for Flagstar and its successors and assigns. The mortgage provided that MERS is the mortgagee under the

mortgage. On March 4, 2013, the mortgage was assigned from MERS, as nominee for Flagstar and its successors and assigns, to Quicken. The assignment was recorded with the St. Clair County Register of Deeds.

Gardner defaulted on the note for nonpayment. On February 11, 2013, Potestivo, a debt collector acting on behalf of Quicken, served a pre-foreclosure notice on Gardner notifying her that default was made for nonpayment and that the amount due under the note was $207,350.35. On March 6, Gardner responded, requesting a meeting with Potestivo to attempt to work out a modification of the mortgage loan. On March 12, Potestivo replied, informing Gardner that it was the designee for Quicken with regard to her loan pursuant to section 600.3205(a)(1)(c) of the Michigan Compiled Laws. Potestivo advised that to initiate a modification, Gardner would need to complete and return certain financial paperwork along with any supporting documentation within seven days. Potestivo also advised that the ninety-day hold on foreclosure proceedings would expire on May 13, 2013. Gardner responded on March 16. Instead of providing the documentation Potestivo requested, Gardner requested documentation of Potestivo's legal right to negotiate with her and to enter into a modification agreement under the terms of the mortgage. On March 25, Potestivo replied, stating that its response was in connection with Gardner's request that Quicken review the loan for a possible modification and again requesting that Gardner complete and return certain financial paperwork along with supporting documentation within seven days. The letter again advised that the ninety-day hold on foreclosure proceedings would expire on May 13, 2013. On April 8, Potestivo again wrote to Gardner, noting the receipt of her March 16 letter, explaining that it was the designee for Quicken, and advising that it must receive Gardner's documentation by April 12, 2013. On May 23, Potestivo again wrote to Gardner, responding to her request for information about the mortgage loan. Potestivo reiterated

that it was the designee for Quicken and informed Gardner that on March 4, 2013, the mortgage was assigned from MERS as nominee for Flagstar to Quicken. Potestivo enclosed copies of the note, mortgage, assignment, and correspondence from its office. The letter also informed Gardner that Quicken was entitled to enforce the mortgage as the mortgagee of record, that the outstanding balance of the loan was $210,270.10, and that a foreclosure sale was scheduled for May 30, 2013. The foreclosure notice was posted on the door of the property and published four times in the Port Huron Times Herald on April 19, April 25, May 3, and May 10, 2013. A sheriff's sale was held on May 30, 2013. Quicken was the highest bidder and received the sheriff's deed to the property. Gardner had six months to redeem the property, and the redemption period expired on November 30, 2013.

A day before the sheriff's sale, on May 29, 2013, Gardner filed a lawsuit in St. Clair County circuit court against Flagstar, Quicken, and Potestivo. Gardner framed her complaint in three counts. Count I sought a declaratory judgment of no debt owed the defendants because they "failed to satisfy their burden of showing they are entitled to enforce the debt." In Count I, Gardner alleged multiple challenges to the foreclosure sale: (1) that the defendants failed to comply with Article 3 of the UCC; (2) that they lacked "standing" to foreclose on her mortgage because the defendants failed to endorse the note and were not a holder in due course; (3) that she was entitled to a copy of the original note before Quicken could foreclose; and (4) that Flagstar violated section 6 of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, because it sold the note shortly after it was originated. Count II alleged that the mortgage was an unenforceable contract of adhesion. Count III sought injunctive relief barring the defendants from proceeding with the foreclosure. On June 19, Quicken and Potestivo timely removed the case to federal district court because Gardner alleged that Flagstar violated the

REPSA, 12 U.S.C. § 2605. Flagstar consented to the removal. Quicken and Potestivo moved to dismiss pursuant to Rule 12(b)(6). Flagstar concurred in the motion. On August 27, 2013, the district court granted the defendants' motion and dismissed Gardner's case for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). *Gardner v. Quicken Loans, Inc.*, No. 13-12720, 2013 WL 4533085, at *1 (E.D. Mich. Aug. 27, 2013). Gardner timely appealed.

## II.

This court reviews *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6). *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The rule permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A plaintiff's complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Courts are not required to accept as true legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

In reviewing this motion to dismiss, the panel may consider the complaint along with any document not formally incorporated by reference or attached to the complaint as part of the pleadings if the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotation marks omitted); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335−36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("'[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))). Hence, in this case, the panel may consider documents relating the note, mortgage, assignment, loan modification process, and foreclosure that are referenced in the complaint and integral to Gardner's claims.

Gardner's complaint raised claims under both Michigan and federal law. As to the former, this court applies the substantive law of Michigan and federal procedural law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938)). In applying Michigan law, we "must 'follow the decisions of the state's highest court when that court has addressed the relevant issue.'" *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quoting *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000)).

On appeal, Gardner ignores the district court's dismissal of some claims and raises other new claims. Gardner does not challenge the district court's dismissal of the RESPA claim, the contract of adhesion claim, or the claim that she was entitled to a copy of the original note before the initiation of foreclosure proceedings. Those claims are therefore forfeited. *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002) ("It is well established that an issue not raised in a party's briefs on appeal may be deemed waived." (citing *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999))). Gardner does, however, challenge the authority of Potestivo and Quicken to initiate the foreclosure sale because the assignment of the mortgage was invalid. This claim is raised for the first time on appeal and therefore is not properly before this court. *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991).

Of the properly presented claims, the focus of Gardner's challenge is that Quicken and Potestivo did not lawfully initiate the foreclosure sale because they cannot show that they are the holder of the note. Gardner couches this challenge as a failure to comply with Article 3 of the UCC, specifically the requirement that a person who makes a "presentment" of an instrument must, upon demand, exhibit the instrument and give reasonable identification. *See* Mich. Comp. Laws § 440.3501. But, as several district courts have properly concluded, the UCC does not apply to mortgage foreclosures. *Schare v. Mortgage Elec. Registration Sys., Inc.*, No. 11-cv-11889, 2012 WL 2031958 (E.D. Mich. June 6, 2012) (holding that Article 3 of the UCC is inapplicable to mortgages); *Jaboro v. Wells Fargo Bank, N.A.*, No. 10-11686, 2010 WL 5296939, at *6 (E.D. Mich. Dec. 20, 2010) (same). More importantly, the highest state court to have addressed the relevant issue has also held that "[a] mortgage instrument is not a negotiable instrument since it does not 'contain an unconditional promise or order to pay a sum certain. . . .'"

*Mox v. Jordan*, 463 N.W.2d 114, 115 (Mich. Ct. App. 1990) (alternation in original) (quoting Mich. Comp. Laws § 440.3104(1)(b)). The *Mox* court explained that "[a] mortgage merely secures payment of the negotiable instrument. In effect, the mortgagor merely grants a security interest in the real estate to the mortgagee." *Id.* (citing *Barbour v. Handlos Real Estate & Bldg. Corp.*, 393 N.W.2d 581, 588 (Mich. Ct. App. 1986)); *see also Schare*, 2012 WL 2031958, at *1– 2 (noting that the argument that the defendant did not meet the UCC's requirements to enforce a negotiable instrument has been rejected *sub silentio* by the Michigan Supreme Court (citing *Residential Funding Co. v. Saurman*, 805 N.W.2d 183 (Mich. 2011))). Therefore, Gardner is not entitled to relief on this claim.[1]

Gardner also reasserts the bare claim that Quicken and Potestivo lacked authority to conduct the foreclosure sale because neither defendant is the holder of the note. Michigan's foreclosure-by-advertisement statute does not require that the underlying note be endorsed to the party instituting the foreclosure or that that party be a holder or a holder-in-due-course of the note. Rather, the statute only requires that the party instituting the foreclosure have an interest in the indebtedness secured by the mortgage. Mich. Comp. Laws § 600.3204(1)(d). The Supreme Court of Michigan has held that mortgagees of record have an interest in the indebtedness. *Saurman*, 805 N.W.2d at 184 ("[T]he Legislature's use of the phrase 'interest in the indebtedness' to denote a category of parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record among the parties entitled to foreclose by advertisement,

---

[1] Gardner also asserts on appeal that the mortgage is a security instrument subject to Article 9 of the UCC. This argument was not conspicuously presented, but it seems that Gardner's claim is that Article 9 requires that only the note holder can enforce its security instrument, the mortgage. In her complaint, Gardner did not specifically challenge the foreclosure sale as in violation of any provision in Article 9 of the UCC. Accordingly, the claim is not properly presented on appeal. *See J.C. Wyckoff*, 936 F.2d at 1488. And, in any event, removed from its UCC housing, Gardner's argument is addressed and rejected below.

along with parties who 'own[ ] the indebtedness' and parties who act as 'the servicing agent of the mortgage.'" (second alteration in original) (quoting Mich. Comp. Laws § 600.3204(1)(d))). Furthermore, the *Saurman* court restated its longstanding view that "[i]t has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands. . . . The choice of a mortgagee is a matter of convenience." *Id.* (second alteration in original) (citing *Adams v. Niemann*, 8 N.W. 719, 720 (Mich. 1881)). In other words, "[u]nder Michigan law, it is lawful for the holder of the mortgage to be different from the holder of the debt." *Hargrow v. Wells Fargo Bank N.A.*, 491 F. App'x 534, 538 (6th Cir. 2012) (citing *Saurman*, 805 N.W. at 184). Accordingly, the district court properly dismissed the claim that Quicken and Potestivo lacked the authority to initiate the foreclosure sale because neither is the holder of the note.

III.

For the foregoing reasons, we affirm the district court's grant of the defendants' motion to dismiss.